MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
(212) 317-1200
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
IVAN VLADIMIR GARCIA ANARIBA,
*individually and on behalf of others similarly
situated,*

                       *Plaintiff,*

              -against-

ATOMIC WINGS FRANCHISOR INC.,
MIRABI INC. (d/b/a DOWN THE HATCH
AND ATOMIC WINGS), ADAM LIPPIN and
MITCHELL BANCHIK,

                 *Defendants.*
--------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION
UNDER 29 U.S.C. § 216(b)**

**ECF Case**

     Plaintiff Ivan Vladimir Garcia Anariba ("Plaintiff Garcia" or "Mr. Garcia"), individually

and on behalf of others similarly situated, by and through his attorneys, Michael Faillace &

Associates, P.C., upon their knowledge and belief, and as against Atomic Wings Franchisor Inc.,

("Franchisor Corporate Defendants"), Adam Lippin ("Franchisor Individual Defendant" and,

together with Franchisor Corporate Defendant, "Franchisor Defendants"); and as against each of

Defendants Mirabi Inc. (d/b/a Down the Hatch and Atomic Wings) ("Franchisee Corporate

Defendant") and Mitchell Banchik ("Franchisee Individual Defendant") (all collectively,

"Defendants"), alleges as follows:

<u>**NATURE OF ACTION**</u>

     1.     Franchisee Defendants own, operate or control a bar and chicken wing restaurant,

located at 179 West Fourth Street, New York, New York 10014.

2.      The bar is operating under the name "Down the Hatch", and the restaurant is operating under the trade name "Atomic Wings."

3.      Franchisee Defendants are franchised to operate an Atomic Wings restaurant under contract with the Franchisor Defendants.

4.      Upon information and belief, Individual Defendant Adam Lippin serves or served as owner, manager, principal or agent of Defendant Atomic Wings Franchisor Inc., and through this corporate entity operates or operated the restaurant as a joint or unified enterprise.

5.      Upon information and belief, Individual Defendant Mitchell Banchik serves or served as owner, manager, principal or agent of Defendant Mirabi Inc., and through this corporate entity operates or operated the franchisee restaurant and bar as a joint or unified enterprise.

6.      Plaintiff Garcia is a former employee of Defendants.

7.      Plaintiff Garcia was employed as a porter and ostensibly as a busboy one day a week, but he was required to spend several hours for that one day performing non-tipped duties unrelated to busboy work, including but not limited to sweeping and cleaning the bar and the basement, sweeping the sidewalk, recycling the bottles stored in the basement, filling up the beer tap/keg, putting beer boxes in the fridge, hosing down the basement floor, cleaning the walls and the bathroom, taking out the trash, washing dishes, deconstructing and tying up boxes, taking out broken glass from the recycling bin, bar-back on several occasions, painting the walls, the steps, the basement, the second basement, the office, organizing the liquor room, receiving and checking deliveries of vegetables and beer, unclogging the kitchen and bathrooms if it flooded, buying vegetables and garnishes from the grocery store/bodega, making deliveries on foot on

various occasions, and going to the hardware store to buy lights, tape, paint, plumbing equipment (hereinafter, "non-tip duties").

8.     At all times relevant to this Complaint, Plaintiff Garcia worked for Franchisee Defendants in excess of 40 hours per week, without appropriate compensation for the hours over 40 per week that he worked.

9.     Rather, Franchisee Defendants failed to pay Plaintiff Garcia appropriately for any hours worked over 40 either at the straight rate of pay or for any additional overtime premium.

10.    Further, for several years Defendants failed to pay Plaintiff Garcia the required "spread of hours" pay for any day in which he had to work over 10 hours a day.

11.    At all times relevant to this Complaint, Franchisee Defendants maintained a policy and practice of requiring Plaintiff Garcia and other employees to work without providing the minimum wage, overtime, and spread of hours compensation required by federal and state law and regulations.

12.    Upon information and belief, Franchisor Defendants knew or should have known of work performed by Plaintiff Garcia and similarly situated employees, and/or knew or should have known of the unlawful policies of requiring Plaintiff Garcia and other employees to work without providing the minimum wage, overtime, and spread of hours compensation required by federal and state law and regulations; and upon information and belief, Franchisor Defendants had the power to stop the work and/or the violations, but did not do so.

13.    Defendants employed and accounted for Plaintiff Garcia as a busboy one day per week in their payroll, but in actuality on that day his duties included spending more than two hours performing the non-tipped duties alleged above.

14.     At all times, regardless of duties, Defendants paid Plaintiff Garcia and all other busboys at the lower tip-credit rate.

15.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiff Garcia's non-tipped duties exceeded 20% of each workday, or 2 hours per day (whichever was less in each day) (12 N.Y.C.R.R. § 146).

16.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiff Garcia's actual duties in payroll records to avoid paying Plaintiff Garcia at the minimum wage rate, and to enable them to pay Plaintiff Garcia at the lower tip-credited rate, by designating him as a busboy instead of a non-tipped employee.

17.     Defendants' conduct extended beyond Plaintiff Garcia to all other similarly situated employees.

18.     Plaintiff Garcia now brings this action on behalf of himself, and other similarly situated individuals, for unpaid overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Lab. Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees, and costs.

19.     Plaintiff Garcia seeks certification of this action as a collective action on behalf of himself individually and all other similarly situated employees and former employees of the Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

4

20.     This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) (FLSA), 28 U.S.C. § 1531 (interstate commerce) and 28 U.S.C. § 1331 (federal question). Supplemental jurisdiction over Plaintiff Garcia's state law claims is conferred by 28 U.S.C. § 1367(a).

21.     Venue is proper in this district under 28 U.S.C. § 391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district, Defendants operate their businesses in this district, and Plaintiff Garcia was employed by Defendants in this district.

## **PARTIES**

### *Plaintiff*

22.     Plaintiff Garcia is an adult individual residing in Bronx County, New York.

23.     Plaintiff Garcia was employed by Defendants from approximately June 2014 until on or about October 2017.

24.     Pursuant to 29 U.S.C. § 216(b), Plaintiff Garcia consents to being a party and brings these claims based upon the allegations herein as a representative party of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

### *Defendants*

25.     At all times relevant to this Complaint, Defendants owned, operated, and/or controlled a bar and chicken wing restaurant located at 179 West Fourth Street, New York, New York 10014 under the name "Down the Hatch" and franchise trade name "Atomic Wings."

### *Franchisor Defendants*

26.     Upon information and belief, Atomic Wings Franchisor Inc. is a domestic corporation organized and existing under the laws of the State of New Jersey. Upon information

5

and belief, Defendant Atomic Wings Franchisor Inc. maintains its corporate headquarters at 25 Valley Road, Montclair, New Jersey 07042.

27.     Defendant Adam Lippin is an individual engaging in business in this judicial district during the relevant time period.  Defendant Adam Lippin is sued individually in his capacity as an owner, officer and/or agent of Atomic Wings Franchisor Inc.  He possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation.  He determined the wages and compensation of the employees of Defendants, including Plaintiff Garcia, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

28.     Upon information and belief, Franchisor Defendant grants franchises to operate Atomic Wings stores in New York and grants sublicenses to franchisees to use the Atomic Wings trademark.

29.     At relevant times, and as a matter of economic reality, Franchisor Defendants were employers of Plaintiff Garcia within the meaning of the FLSA and the NYLL, and Franchisor Defendants employed and/or jointly employed Plaintiff Garcia and similarly situated employees within the meaning of the FLSA and NYLL.

30.     Facts which demonstrate that Franchisor Defendants were Plaintiff Garcia's employers include:

      a.  Defendants all suffered or permitted Plaintiff Garcia and similarly situated employees to work.

      b.  Each of the Defendants acted directly or indirectly in the interest of one another in relation to Plaintiff Garcia and similarly situated employees.

c.   Defendants each have an economic interest in the Atomic Wings locations in which Plaintiff Garcia and similarly situated employees work.

d.   Defendants all simultaneously benefitted from Plaintiff Garcia's work.

e.   Defendants each had either functional and/or formal control over terms and conditions of work of Plaintiff Garcia and similarly situated employees.

f.   Plaintiff Garcia and similarly situated employees performed work integral to each Defendant's operation.

*Franchisee Defendants*

31.    Upon information and belief, Mirabi Inc. ("Defendant Corporation") is a corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 179 West Fourth Street, New York, New York 10014.

32.    Defendant Mitchell Banchik is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period. Defendant Mitchell Banchik is sued individually and in his capacity as an owner, officer and/or agent of Defendant Corporation.

33.    Defendant Mitchell Banchik possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation and/or controlled significant functions of Defendant Corporation.

34.    Defendant Mitchell Banchik determined the wages and compensation of the employees of Defendants, including Plaintiff Garcia, established the schedules of the employees, maintained employee records and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

35.     Defendants operate a bar and a chain chicken wing restaurant located at 179 West Fourth Street, New York, New York 10014.

36.      Individual Defendant Adam Lippin possesses operational control over Defendant Franchisor Corporation, possesses an ownership interest in Defendant Franchisor Corporation, and controls significant functions of Defendant Franchisor Corporation.

37.     Individual Defendant Mitchell Banchik possesses operational control over Defendant Franchisee Corporation, possesses an ownership interest in Defendant Franchisee Corporation, and controls significant functions of Defendant Franchisee Corporation.

38.     Defendants possess or possessed substantial control over Plaintiff Garcia's (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiff Garcia, and all similarly situated individuals, referred to herein.

39.     Defendants employ or employed Plaintiff Garcia, and all similarly situated individuals, and are or were Plaintiff Garcia's (and all similarly situated individuals') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

40.     Upon information and belief, Individual Defendants Adam Lippin and Mitchell Banchik operate Defendant Corporations as either alter egos of themselves, and/or failed to operate Defendant Corporations as entities legally separate and apart from themselves by, among other things,

> a.   failing to adhere to the corporate formalities necessary to operate Defendant Corporations as corporations,

8

b.  defectively forming or maintaining Defendant Corporations by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c.  transferring assets and debts freely as between all Defendants,

d.  operating Defendant Corporations for their own benefit as the sole or majority shareholders,

e.  operating Defendant Corporations for their own benefit and maintaining control over these corporations as  closed corporations,

f.  intermingling assets and debts of their own with Defendant Corporations and diminishing and/or transferring assets to avoid full liability as necessary to protect their own interests, and

g.  Other actions evincing a failure to adhere to the corporate form.

41.     At all relevant times, Franchisee Defendants were Plaintiff Garcia's employers within the meaning of the FLSA and New York Labor Law.  Franchisee Defendants had the power to hire and fire Plaintiff Garcia, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiff Garcia's services.

42.     Upon information and belief, Franchisor Defendants run a chicken wing fast food business dependent on its franchise and corporate-owned store selling and delivering food based on a prescribed mode. As such, upon information and belief, Plaintiff Garcia's work as a worker who performs duties within this model is integral to Franchisor Defendants' operations.

43.     Upon information and belief, Franchisor Defendants coordinate certain customer service options for all stores, corporate and franchise owned. For example, Franchisor

Defendants have ongoing marketing and promotional support for Atomic Wings stores. *See* http://atomicwings.com/franchising/

44. Upon information and belief, Franchisor Defendants have maintained control over many aspects of Franchisee Defendants' operations. For example, upon information and belief, Atomic Wings stores must undergo extensive training and are distributed operational materials.

45. Upon information and belief, through its franchise agreement and in other ways, Franchisor Defendants set requirements for the operation of Franchise Defendants and enforced those requirements, in particular, requirements related to the work of Plaintiff Garcia and similarly situated employees. The requirements include, but are not limited to, setting Atomic Wings delivery areas, monitoring employee performance, specifying equipment, uniforms, and supplies for the use of Plaintiff Garcia and other similarly situated employees, and specifying the methods and procedures Plaintiff Garcia and other similarly situated employees use in preparing customer orders.

46. Upon information and belief, through these requirements, Franchisor Defendants had the authority and exercised the authority to control, directly or indirectly, the work of Plaintiff Garcia and similarly situated employees.

47. Upon information and belief, the Franchisor Defendants had the authority to and did require that Franchisee Defendants employ recordkeeping of the operation of Franchisee Defendants, including systems for tracking hours and wages and for retaining payroll records. Upon information and belief, these recordkeeping systems required by Franchisor Defendants were an instrument through which unlawful policies, patterns, and/or practices in this case were implemented.

48.     Upon information and belief, Franchisor Defendants had the right to inspect the facilities and operations of Franchisee Defendants.

49.     Upon information and belief, Franchisor Defendants had the right to audit all Franchisee records.

50.     Upon information and belief, Franchisor Defendants had the authority to control, directly or indirectly, the timekeeping and payroll practices of Franchisee Defendants.

51.     Upon information and belief, Franchisor Defendants knew or should have known of, and had the authority to exercise control over, the accuracy of records concerning the hours and wages of Plaintiff Garcia and similarly situated employees through the monitoring of Franchisees.

52.     Franchisor Defendants could have terminated the franchise agreements of Franchisee Defendants and caused Franchisee Defendants to cease operation of the franchise stores under certain circumstances, including in the event of violations of the law. Thus, upon information and belief, Franchisor Defendants have had the authority to stop violations of the labor law and, ultimately, to control the employment of Plaintiff Garcia and similarly situated employees, including, but not limited, causing the termination of their employment. Moreover, Franchisor Defendants have had the power to induce compliance with applicable wage and hour laws by threatening to terminate a franchise agreement.

53.     In each year from 2014 to 2017, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

54.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce.  As an example, numerous items that were used in the restaurant and bar on a daily basis were goods produced outside of the State of New York.

## *Individual Plaintiff*

55.     Plaintiff Garcia is a former employee of Defendants who was employed in several capacities as a porter, and ostensibly employed as a busboy one day a week, but who spent more than two hours a day performing the non-busboy, non-tip duties outlined above on the days he was designated to work as a busboy.

56.     Plaintiff Garcia seeks to represent a class of similarly situated individuals under 29 U.S.C. § 216(b).

## *Plaintiff Ivan Vladimir Garcia Anariba*

57.     Plaintiff Garcia was employed by Defendants from approximately June 2014 until on or about October 2017.

58.     Plaintiff Garcia was employed in several capacities in the restaurant including: porter and ostensibly as a busboy.

59.     Plaintiff Garcia regularly handled goods in interstate commerce, such as cleaning supplies and food produced outside of the State of New York.

60.      Plaintiff Garcia's work duties required neither discretion nor independent judgment.

61.     Throughout his employment with Defendants, Plaintiff Garcia regularly worked in excess of 40 hours per week.

62. From approximately June 2014 until on or about October 2014, Plaintiff Garcia worked from approximately 6:00 a.m. until on or about 3:00 p.m. Tuesdays through Sundays (typically 54 hours per week).

63. From approximately October 2014 until on or about February 2015, Plaintiff Garcia worked from approximately 6:00 a.m. until on or about 3:00 p.m. Tuesdays through Fridays and from approximately 6:00 a.m. until on or about 7:00 p.m. Saturdays and Sundays (typically 62 hours per week).

64. From approximately February 2015 until on or about July 2015, Plaintiff Garcia worked from approximately 6:00 a.m. until on or about 3:00 p.m. Mondays, Tuesdays, Thursdays, and Fridays, from approximately 6:00 a.m. until on or about 7:00 p.m. on Saturdays, and from approximately 6:00 a.m. until on or about 3:00 p.m. to 7:00 p.m. on Sundays (typically 58 to 62 hours per week).

65. From approximately July 2015 until on or about February 2016, Plaintiff Garcia worked from approximately 6:00 a.m. until on or about 3:00 p.m. Mondays, Tuesdays, Thursdays and Fridays, from approximately 11:00 a.m. until on or about 7:30 p.m. on Saturdays and from approximately 6:00 a.m. until on or about 7:00 p.m. on Sundays (typically 57.5 hours per week).

66. From approximately February 2016 until on or about April 2017, Plaintiff Garcia worked from approximately 6:00 a.m. until on or about 2:00 p.m. Mondays, Tuesdays, Thursdays and Fridays, from approximately 11:30 a.m. until on or about 7:00 p.m. on Saturdays and from approximately 6:00 a.m. until on or about 7:00 p.m. on Sundays (typically 52.5 hours per week).

67.     From approximately April 2017 until on or about October 2017, Plaintiff Garcia worked from approximately 6:00 a.m. until on or about 3:00 p.m. Mondays, Tuesdays, Thursdays and Fridays, from approximately 11:30 a.m. until on or about 7:00 p.m. on Saturdays and from approximately 6:00 a.m. until on or about 3:00 p.m. Sundays (typically 52.5 hours per week).

68.     Throughout his employment with Defendants, Plaintiff Garcia was paid his wages by check via direct deposit.

69.     However, Defendants provided wage statements to Plaintiff Garcia that didn't reflect an accurate amount of the hours he worked.

70.     From approximately June 2014 until on or about December 2014, Plaintiff Garcia was paid $10.00 per hour for an average of 40 hours per week, $9 per hour for an average of 7 hours per week and $15 per hour for an average of 8 hours per week.

71.     For the month of January 2015, Plaintiff Garcia was paid $10 per hour for an average of 40 hours per week, $9.38 per hour for an average of 14 hours per week and $15 per hour for an average of 8 hours per week.

72.     From approximately February 2015 until on or about March 2015, Plaintiff Garcia was paid $5 per hour for an average of 3 hours per week, $11 per hour for an average of 37 hours per week, $9.38 per hour for an average of 12 hours per week and $16.50 per hour for an average of 5 hours per week.

73.     From approximately April 2015 until on or about December 2015, Plaintiff Garcia was paid $11 per hour for an average of 35 hours per week.

74.     From approximately January 2016 until on or about March 2016, Plaintiff Garcia was paid $11 per hour for an average of 22 hours per week and $7.50 per hour for an average of 8 hours per week.

75.     From approximately March 2016 until on or about July 2016, Plaintiff Garcia was paid $11 per hour for an average of 32 hours per week, $16.50 per hour for an average of 5 hours per week, $12 per hour for an average of 10 hours per week and $7.50 per hour for an average of 5 hours per week.

76.     From approximately July 2016 until on or about December 2016, Plaintiff Garcia was paid $11.50 per hour for an average of 35 hours per week, $17.25 per hour for an average of 6 hours per week, $12 per hour for an average of 12 hours per week and $7.50 per hour for an average of 4 hours per week.

77.     From approximately January 2017 until on or about April 2017, Plaintiff Garcia was paid $11.50 for an average of 32 hours per week, $17.25 for an average of 8 hours per week and $7.50 for an average of 6 hours per week.

78.     From approximately April 2017 until on or about September 2017, Plaintiff Garcia was paid $12.00 for an average of 31 hours per week, $18 for an average of 7 hours per week, and $7.50 for an average of 8 hours per week.

79.     From approximately September 2017 until on or about October 2017, Plaintiff Garcia was paid $13.00 per hour for an average of 40 hours per week.

80.     Defendants did not grant Plaintiff Garcia any break or meal periods of any length.

81.     However, throughout his entire employment, Defendants deducted anywhere from approximately $16 per week from Plaintiff Garcia's paycheck for meals that were never provided to him.

15

82.     Plaintiff Garcia was never notified by Defendants that his tips would be included as an offset for wages.

83.     Defendants did not account for these tips in any daily, weekly or other accounting of Plaintiff Garcia's wages.

84.     Defendants withheld a portion of Plaintiff Garcia's tips; specifically, Defendants' managers such as AJ pocketed a portion of all cash tips customers left for Plaintiff Garcia.

85.     Defendants never provided Plaintiff Garcia with a written notice, in English and in Spanish (Plaintiff Garcia's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

86.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Garcia regarding overtime and wages under the FLSA and NYLL.

87.     Defendants required Plaintiff Garcia to purchase "tools of the trade" with his own funds—including fifteen pairs of shoes.

*Defendants' General Employment Practices*

88.     Defendants regularly required their employees, including Plaintiff Garcia, to work in excess of forty (40) hours per week without paying them the proper minimum wage, overtime, or Spread of Hours compensation.

89.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff Garcia (and all similarly situated employees) to work in excess of forty (40) hours per week without paying him appropriate minimum wage and/or overtime compensation, as required by federal and state laws.

90.     At no time did Defendants inform their employees, including Plaintiff Garcia, that they had reduced their hourly wages by a tip allowance.

91.     Defendants failed to inform Plaintiff Garcia that they intended to take a deduction against his earned wages for tip income, as required by the NYLL before any deduction may be taken.

92.     Defendants failed to inform Plaintiff Garcia that his tips would be credited towards the payment of the minimum wage.

93.     Defendants failed to maintain a record of tips earned by Plaintiff Garcia for his work as a busboy.

94.     As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiff Garcia by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving Plaintiff Garcia of a portion of the tips earned during the course of employment.

95.     Defendants unlawfully misappropriated charges purported to be gratuities received by Plaintiff Garcia, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

96.     Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

97.     Defendants required all busboys, including Plaintiff Garcia, to perform general non-tipped restaurant tasks in addition to their primary duties as busboys.

98.     Plaintiff Garcia, and all similarly situated employees, were ostensibly employed as tipped employees by Defendants, although their actual duties included greater or equal time spent performing non-delivery, non-tipped duties.

17

99.     Plaintiff Garcia and all other busboys were paid at the tip-credit rate outlined by the NYLL.

100.     However, under state law, Defendants were not entitled to a tip credit because the busboys' and Plaintiff Garcia's non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever was less) (12 N.Y.C.R.R. § 146).

101.     New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he has been assigned to work in an occupation in which tips are not customarily received.   (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

102.     The busboys', including Plaintiff Garcia's, non-tipped duties were not incidental to their occupation as delivery workers and busboys, but instead constituted entirely unrelated general restaurant work duties, including the non-tipped duties described above.

103.     In violation of federal and state law as codified above, Defendants classified Plaintiff Garcia and other busboys as tipped employees when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

104.     Throughout most of the time he worked for defendants, Plaintiff Garcia was paid his wages by check via direct deposit.

105.     Defendants failed to post required wage and hour posters in the restaurant, and did not provide their employees, including Plaintiff Garcia, with accurate statutorily required wage and hour records or statements of their pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of their employees', including Plaintiff Garcia's, relative lack of sophistication in wage and hour laws.

106.    Upon information and belief, these practices were done to disguise the actual number of hours Plaintiff Garcia, and similarly situated employees, worked and to avoid paying them properly for their (1) full hours worked, (2) minimum wage, (3) overtime wages, and (4) spread of hours pay.

107.    Defendants failed to provide Plaintiff Garcia and other employees with accurate wage statements at the time of each payment of wages containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

108.    Defendants failed to provide Plaintiff Garcia and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

109.    Plaintiff Garcia brings his FLSA minimum and overtime wages, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants, or any of them, on or after the date that is three years before the filing of the complaint in his case (the "FLSA Class Period"), as employees of Defendants (the "FLSA Class").

110.    At all relevant times, Plaintiff Garcia, and other members of the FLSA Class who are and/or have been similarly situated, had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them the required minimum wage, overtime pay of one and one-half times his regular rates for work in excess of forty (40) hours per workweek under the FLSA and willfully taking improper wage deductions and other improper credits against the FLSA Class' wages for which Defendants did not qualify under the FLSA,.

111.    The claims of Plaintiff Garcia stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE FLSA MINIMUM WAGE PROVISIONS

112.    Plaintiff Garcia repeats and realleges all paragraphs above as though fully set forth herein.

113.    At all times relevant to this action, Defendants were Plaintiff Garcia's employers (and employers of the putative FLSA Class members) within the meaning of the Fair Labor Standards Act.  29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiff Garcia

20

(and the FLSA class members), controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

114.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

115.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act.  29 U.S.C. § 203 (r-s).

116.    Defendants failed to pay Plaintiff Garcia (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

117.    Defendants' failure to pay Plaintiff Garcia (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

118.    Plaintiff Garcia (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE FLSA OVERTIME PROVISIONS

119.    Plaintiff Garcia repeats and realleges all paragraphs above as though fully set forth herein.

120.    At all times relevant to this action, Defendants were Plaintiff Garcia's employers (and employers of the putative FLSA Class members) within the meaning of the Fair Labor Standards Act.  29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiff Garcia (and the FLSA class members), controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for his employment.

121.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

122.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act.  29 U.S.C. § 203 (r-s).

123.    Defendants, in violation of 29 U.S.C. § 207 (a)(1) of the FLSA, failed to pay Plaintiff Garcia  (and the FLSA Class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

124.    Defendants' failure to pay Plaintiff Garcia (and the FLSA Class members) overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

125.    Plaintiff Garcia (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE NEW YORK MINIMUM WAGE RATE

126.    Plaintiff Garcia repeats and realleges all paragraphs above as though fully set forth herein.

127.    At all times relevant to this action, Defendants were Plaintiff Garcia's employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiff Garcia (and the FLSA Class members), controlled terms and conditions of employment, and determined the rates and methods of any compensation in exchange for employment.

128.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiff Garcia (and the FLSA Class members) less than the minimum wage.

129.    Defendants' failure to pay Plaintiff Garcia (and the FLSA Class members) minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

130.    Plaintiff Garcia (and the FLSA Class Members) were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE

### NEW YORK STATE LABOR LAW

131.    Plaintiff Garcia repeats and realleges all paragraphs above as though fully set forth herein.

132.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*. and supporting regulations of the New York State Department of Labor, failed to pay Plaintiff Garcia (and the FLSA Class Members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

133.    Defendants' failure to pay Plaintiff Garcia (and the FLSA Class Members) overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

134.    Plaintiff Garcia (and the FLSA Class Members) were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

### OF THE NEW YORK COMISSIONER OF LABOR

135.    Plaintiff Garcia repeats and realleges all paragraphs above as though fully set forth herein.

136.    Defendants failed to pay Plaintiff Garcia  one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiff Garcia's spread of hours exceeded

ten hours in violation of NYLL §§ 190 *et seq*. and 650 *et seq*. and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 146-1.6.

137.     Defendants' failure to pay Plaintiff Garcia an additional hour's pay for each day Plaintiff Garcia's spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

138.     Plaintiff Garcia was damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

139.     Plaintiff Garcia repeats and realleges all paragraphs above as though fully set forth herein.

140.     Defendants failed to provide Plaintiff Garcia  with a written notice, in English and in Spanish (Plaintiff Garcia's primary language), of his rate of pay, regular pay day, and such other information as required by NYLL §195(1).

141.     Defendants are liable to Plaintiff Garcia in the amount of $5,000, together with costs and attorney's fees.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

142.     Plaintiff Garcia repeats and realleges all paragraphs above as though set forth fully herein.

143.     Defendants did not provide Plaintiff Garcia with a statement of wages with each payment of wages, as required by NYLL 195(3).

24

Defendants are liable to Plaintiff Garcia in the amount of $5,000, together with costs and attorney's fees.

## EIGHTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

144.     Plaintiff Garcia repeats and realleges all paragraphs above as though set forth fully herein.

145.     Defendants required Plaintiff Garcia to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform his job, such as shoes, further reducing his wages in violation of the FLSA and NYLL. 29 U.S.C. § 206(a); 29 C.F.R § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

146.     Plaintiff Garcia was damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM TIPS

## IN VIOLATION OF THE NYLL

147.     Plaintiff Garcia repeats and realleges all paragraphs above as though fully set forth herein.

148.     At all relevant times, Defendants were Plaintiff Garcia's employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

149.     New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge, purported to be a gratuity for an employee.

150.     Defendants unlawfully misappropriated a portion of Plaintiff Garcia's (and the

FLSA class members) cash tips that were received from customers.

151.   Defendants unlawfully required Plaintiff Garcia and the FLSA class members to share part of the gratuities they received with employees other than waiters, servers, bussers, or similar employees, in violation of NYLL § 196-d and supporting regulations.

152.   Defendants knowingly and intentionally retained a portion of Plaintiff Garcia's tips in violations of the NYLL and supporting Department of Labor Regulations.

153.   Plaintiff Garcia (and the FLSA class members) were damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM WAGES

## IN VIOLATION OF THE NYLL

140.   Plaintiff Garcia repeats and realleges all paragraphs above as though fully set forth herein.

141.   At all relevant times, Defendants were Plaintiff Garcia's employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

142.   Defendants made unlawful deductions from the wages of Plaintiff Garcia (and the FLSA class members).

143.   The deductions made from wages of Plaintiff Garcia (and the FLSA class members) were not authorized or required by law.

144.   Through their knowing and intentional efforts to take unauthorized deductions from the wages of Plaintiff Garcia and the FLSA class members, Defendants willfully violated NYLL Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

145.   Plaintiff Garcia (and the FLSA class members) were damaged in an amount to be

determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Garcia respectfully request that this Court enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff Garcia and the FLSA class members;

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff Garcia and the FLSA class members;

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiff Garcia's, and the FLSA class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violation of the provisions of the FLSA were willful as to Plaintiff Garcia  and the FLSA class members;

(f)     Awarding Plaintiff Garcia and the FLSA class members damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA, as applicable;

(g)     Awarding Plaintiff Garcia and the FLSA class members liquidated damages in an amount equal to 100% of his damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff Garcia;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff Garcia;

(j)     Declaring that Defendants violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiff Garcia;

(k)     Declaring that Defendants violated the tip withholding provisions of the New York Labor Law, with respect to Plaintiff Garcia;

(l)     Declaring that Defendants violated the recordkeeping requirements of the NYLL with respect to Plaintiff Garcia's compensation, hours, wages; and any deductions or credits taken against wages;

(m)     Declaring that Defendants' violations of the New York Labor Law were willful as to Plaintiff Garcia;

(n)     Awarding Plaintiff Garcia   damages for the amount of unpaid minimum wage, spread of hours pay and overtime compensation, as well as   damages for any improper deductions or credits taken against wages;

(o)     Awarding Plaintiff Garcia  damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§ 198(1-b) and 198(1-d);

(p)     Awarding Plaintiff Garcia liquidated damages in an amount equal to one hundred

28

percent (100%) of the total amount of minimum wage shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)     Awarding Plaintiff Garcia liquidated damages in an amount equal to one hundred percent (100%) of the spread of hours pay and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable;

(r)     Awarding Plaintiff Garcia and the FLSA class members pre-judgment and post-judgment interest as applicable;

(s)     Awarding Plaintiff Garcia and the FLSA class members the expenses incurred in this action, including costs and attorney's fees;

(t)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(u)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Garcia demands a trial by jury on all issues triable by a jury.

Dated: New York, New York
        December 27, 2017

MICHAEL FAILLACE & ASSOCIATES, P.C.

_____/s/ Michael Faillace_____

By:     Michael A. Faillace [MF-8436]
        60 East 42nd Street, Suite 4510
        New York, New York 10165
        (212) 317-1200
        *Attorneys for Plaintiff*

29

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

November 20, 2017

BY HAND


TO:    Clerk of Court,


I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                         **Ivan Vladimir Garcia Anariba**

                                       Michael Faillace & Associates, P.C. _____

Legal Representative / Abogado:

Signature / Firma:                     _Ivan Garcia_ _____

                                       _____ 20 de noviembre de 2017 _____

Date / Fecha:


_Certified as a minority-owned business in the State of New York_